IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                                    :
THE PENN MUTUAL LIFE INSURANCE
COMPANY                             :

    v.                              :        Civil Action No. DKC 09-0578

JONATHAN S. BERCK, as trustee :
of THE MARVIN ROSENBLATT
IRREVOCABLE TRUST[1]                :

**MEMORANDUM OPINION**

Two motions are pending and ready for resolution in this life insurance case: Defendant's motion to dismiss (Paper 23) and Plaintiff's motion for leave to file a second amended complaint (Paper 40). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.

For the reasons that follow, Defendant's motion to dismiss will be denied and Plaintiff's motion for leave to file a second amended complaint will be granted.

**I.   Background**

This case involves allegations of the existence of a stranger originated life insurance, or STOLI, plan. Plaintiff, The Penn Mutual Life Insurance Company, alleges in the First Amended Complaint that Marvin Rosenblatt ("Rosenblatt") spoke

---

[1] At the time the original complaint was filed, Shara Blumberg was the trustee. A second substitution made Mr. Berck the trustee.

with promoters of STOLI plans at some point before February 21, 2007.  (Paper 14 ¶ 16).  Plaintiff alleges that Rosenblatt made an agreement with the promoters to apply for a life insurance policy to be issued by Plaintiff and then later to sell the policy or an interest in the policy to an investor in the secondary market.  (*Id*.).

On February 3, 2007, Rosenblatt created the Rosenblatt Trust ("Trust"), which was intended to be the owner of the life insurance policy he planned to buy.  (Paper 14 ¶¶ 20-21).  On February 21, 2007, Rosenblatt applied for a $6 million life insurance policy.  (*Id*. at ¶ 18).  Rosenblatt indicated that the reason for the life insurance policy was "Estate Planning." (*Id*.).  The application indicated that the primary source of funds would be the Trust.  (*Id*. at ¶ 26).  The original Trustee was Shara Blumberg.  She was replaced in March 2007 by Brian Sullivan.  In August 2007, Jonathan Berck ("Berck") replaced Brian Sullivan.  (*Id*. at ¶ 34).

Plaintiff alleges that after the issuance of the Rosenblatt life insurance policy (the "Policy"), Rosenblatt took the steps necessary to transfer the Policy, or a beneficial interest in the same, to an investor whom Rosenblatt did not know prior to completing the application. (*Id*. at ¶ 30).  Plaintiff further alleges that Rosenblatt has relinquished or agreed to relinquish

any beneficial interest in the proceeds of the Policy, as well as interests in the Trust. (*Id*. at ¶ 32).

As of the date of the amended complaint, Plaintiff had received an aggregate of $407,828 in premium payments for the Policy with at least one payment (of $60,000) being paid by Berck. (*Id*. at ¶ 33).

In 2008, Plaintiff twice attempted to reach Rosenblatt. First, Plaintiff called him to inquire about the circumstances surrounding the issuance of the Policy, but was unable to reach him. Then, on August 18, 2008, Plaintiff sent Rosenblatt a letter advising him that it was performing an audit of certain life insurance policies, including his, and requesting that he contact Plaintiff. Rosenblatt never responded. (*Id*. at ¶¶ 39-40).

Plaintiff filed its original complaint on March 9, 2009, and the case was assigned to United States District Judge Peter Messitte. (Paper 1). On May 13, 2009, Plaintiff filed a two count amended complaint. (Paper 14). First, it seeks a judicial declaration that the Policy is void *ab initio* because it was issued in reliance upon material misrepresentations, or in the alternative, that the misrepresentations constitute ground for rescission. (Paper 14 ¶ 53). Second, Plaintiff seeks a judicial declaration that the Policy lacked an insurable

interest at inception and is therefore void *ab initio*.  (Paper 14 ¶ 58).

Defendant filed a motion to dismiss on June 18, 2009. (Paper 23).  Plaintiff filed a response in opposition and a motion for leave to file a second amended complaint on September 11, 2009.  (Papers 39 and 40).  Defendant responded in opposition to the motion for leave to file an amended complaint and replied supporting its motion to dismiss on October 16, 2009.  (Papers 45 and 46).  Several motions hearings were set by Judge Messitte, but were canceled due to scheduling conflicts. The case was transferred to the undersigned on February 17, 2010.

In the motion for leave to file the second amended complaint, and in the proposed second amended complaint, Plaintiff seeks to add Marvin Rosenblatt and Robert Finfer ("Finfer") as defendants and elaborates on the allegations as follows:

Plaintiff states that Finfer, an agent for the Trust, completed and signed an Agent's Underwriting Report in connection with the Policy application on February 21, 2007. (Paper 40, Proposed Second Amended Complaint at ¶ 30).  Finfer answered "no" to questions concerning whether any part of the premium would be paid for by borrowed funds, or if any discussion had occurred that would lead him to believe that this

policy would be sold or assigned to a secondary market provider. (*Id.* at ¶¶ 31-35).

Plaintiff also alleges that in May 2009, the original trustee of the Trust, Shara Blumberg ("Blumberg"), spoke to representatives from Penn Mutual. (*Id*. at ¶ 36). Blumberg explained that she had no connection to Rosenblatt, and was asked by her brother-in-law to serve temporarily as the trustee. (*Id*. at ¶¶ 37-38). When she received the Policy application, the application was only partially completed and had tabs labeled "sign here" to indicate where Blumberg should place her signature. (*Id*. at ¶ 42). She communicated with her brother-in-law and Birute Adams, the chief operating officer of Oceangate Life Settlements, prior to returning the executed application to her brother-in-law. (*Id*. at ¶ 40). Plaintiff alleges that Oceangate Life Settlements is involved in the secondary market and is in the business of purchasing insurance policies. (*Id*. at ¶ 41). After she returned the executed application, Blumberg was instructed by Birute Adams to debit the Trust account with funds that she had received from her brother-in-law's company, "Life Spring." (*Id*. at ¶ 44).

The proposed second amended complaint seeks a declaratory judgment as to all defendants in count one, a declaratory judgment only as to the Rosenblatt Trust in count two, and damages for fraud against all defendants in count three.

As is discussed below, the motion for leave to file an amended complaint will be granted because it would survive a motion to dismiss and is not futile.  Defendant's motion to dismiss will be denied.

## II.  Motion for leave to file second amended complaint

Fed.R.Civ.P. 15(a)(2) provides under circumstances relevant to this case that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

The Supreme Court has said that

> In the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc., the leave sought to amend a complaint should, as the rules require, be "freely given." The grant or denial of an opportunity to amend is within the discretion of the district court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules of Civil Procedure.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  In this case, allowing the amended complaint will cause no undue delay, and there is no evidence of any bad faith or dilatory motive.  The only real question is whether the proposed amendments would be

futile.   That assessment turns, in part, on the arguments made

by the parties in the motion to dismiss papers.   The standard

for futility is the same as a motion to dismiss under Fed.

R.Civ.P. 12(b)(6). *See Perkins v. United States*, 55 F.3d 910,

917 (4th Cir. 1995)(amendment is futile if the amended claim

would fail to survive motion to dismiss).   "Leave to amend

should be denied on the ground of futility only when the

proposed amendment is clearly insufficient or frivolous on its

face." *Cappetta v. GC Services Ltd. Partnership*, 2009 WL 482474

at *4 (4th Cir. 2009)(citing *Davis v. Piper Aircraft Corporation*,

615 F.2d 606, 613 (4th Cir. 1986); *Johnson v. Oroweat Foods Co.*,

785 F.2d 503, 510 (4th Cir. 1986)).

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P.

12(b)(6) is to test the sufficiency of the plaintiff's

complaint.   *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243

(4th Cir. 1999).   Except in certain specified cases, a

plaintiff's complaint need only satisfy the "simplified pleading

standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, 513 (2002), which requires a "short and plain statement of

the claim showing that the pleader is entitled to relief."

Fed.R.Civ.P.   8(a)(2).    Nevertheless,   "Rule   8(a)(2)   still

requires a 'showing,' rather than a blanket assertion, of

entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 n.3 (2007).   That showing must consist of more than "a

formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).  In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

This case involves an allegation of fraud, which requires a higher showing to survive a motion to dismiss.  Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed.R.Civ.P. 9(b).  "Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 n.6 (4th Cir. 1999).  Not all the causes of action

alleged in the complaint at issue include allegations of fraudulent behavior.  Only causes of action involving fraud must meet the higher standard imposed by Rule 9(b).  *See Balt. County v. Cigna Health*care, 238 Fed. Appx. 914, 922 (4th Cir. 2007)(unpublished)(quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003)).

> A plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements.

*Id*. at 1104.   Rule 9(b) "does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct."  *Id*. at 1104.

**III. Analysis**

In Count I of the proposed second amended complaint, Plaintiff asks the court to declare that the Policy is void *ab initio* for one of two reasons: either because of Plaintiff's reliance on material misrepresentations made in the application, or because the misrepresentations constitute grounds for rescission of the Policy.  In Count II, Plaintiff asks the court to issue a declaratory judgment that the Rosenblatt Trust lacked an insurable interest at inception and the Policy is therefore void *ab initio*.  In Count III, Plaintiff seeks fraud damages.

Plaintiff alleges that the application contained four misrepresentations and one omission:

> 1. The application falsely stated that Mr. Rosenblatt and/or the Rosenblatt Trust had not been involved in any discussions about the possible sale or assignment of the Rosenblatt Policy to a Life Settlement, Viatical or other secondary market provider;
>
> 2. The Application falsely stated that the premiums would not be paid from borrowed funds;
>
> 3. The Application falsely stated that the source of the funds would be the Trust;
>
> 4. The Application falsely stated that the purpose of the Rosenblatt Policy was estate planning; and
>
> 5. The Application materially omitted the identity of the payor of the Rosenblatt Policy premiums.

(Paper 40, Proposed Second Amended Complaint at ¶ 45).

In its motion to dismiss[2], Defendant argues that Plaintiff alleges no facts to support any of the misrepresentations that it alleges were made on the application.  It also argues that the facts offered to support Count II are inadequate.  Rather, Defendant says, Plaintiff makes conclusory allegations on an "unspecified 'scheme' on information and belief, without

---

[2] At the time the motion to dismiss was filed, there was only one defendant, the Trustee of the Rosenblatt Trust.  As noted, Plaintiff seeks to add two additional defendants.  The opposition to the motion for leave to amend is also filed on behalf of the Trustee, but advances arguments on behalf of Mr. Rosenblatt.

stating the facts that form the basis of that belief or the source of the information." (Paper 23, at 17). Defendant further maintains that there is no factual support for the allegation that Rosenblatt misrepresented the primary source of funds for the payment of premiums, and that no facts support the contention that estate planning was not the purpose of the policy, as Rosenblatt stated. (*Id*. at 21-22).

Plaintiff argues that it has met the fraud pleading standards. (Paper 39, at 11; Paper 40, Attach. 4, at 5). It maintains that although pleadings alleging fraud generally may not be based on information and belief, when the facts constituting the fraud are within the adverse party's knowledge an exception to the general rule exists. (Paper 39, at 12). Plaintiff argues that it has met the pleading standards of all alleged misrepresentations and that it does not have specific knowledge of the underlying STOLI transaction and it is not required to plead such details when they are within the unique knowledge of the STOLI perpetrators. (*Id*.).

Plaintiff's proposed second amended complaint is adequate under the pleading requirements imposed by the federal rules. Plaintiff has adequately identified four misrepresentations and one omission that are specific, and has adequately stated its basis of knowledge about each transaction. Plaintiff alleges specifics regarding the underwriting report and its completion,

as well as facts describing the tenuous connection that the first trustee had to Rosenblatt.  Plaintiff has knowledge about where initial funds for the Trust came from, and has described the trustee's interactions with someone from a company that purchases insurance policies.  These and other allegations suffice for purposes of satisfying pleading requirements of the federal rules.  Also, courts have held that the particularity requirements of Rule 9(b) do not apply to omissions or allegations of concealment.  *See Hill v. Brush Engineered Materials, Inc.*, 383 F.Supp.2d 814, 819 (D.Md. 2005); *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 552 (D.Md. 1997)(both citing to *Flynn v. Everything Yogurt*, 1993 WL 454355 at *9 (D.Md. 1993), to the effect that "omissions cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.").  The facts underlying the STOLI transaction in this case are within the unique knowledge of Defendants, and requiring details such as the time and place of meetings and transactions would preclude nearly all potential plaintiffs from bringing a claim of this type.

Furthermore, Defendant is aware of the factual basis of Plaintiff's claims.  The United States Court of Appeals for the Fourth Circuit has held that a court should hesitate to dismiss a complaint under Rule 9(b) "if the court is satisfied (1) that

the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). In this case, Defendant has full knowledge of the circumstances for which it will have to prepare a defense. Furthermore, it is clear from the proposed second amended complaint that Plaintiff does have substantial prediscovery evidence of facts based on meeting with the first trustee and from gathering information regarding the completion of the underwriting report and application, and payment of premiums. Therefore, Plaintiff is able to support its claims adequately for this stage of the proceedings.

Defendant also moves to dismiss Count I because, it alleges, Plaintiff failed to plead that it tendered return of the premiums, which is an essential element of the substantive claim of rescission. (Paper 23, at 8). Defendant refers to Maryland case law establishing that an "insurer must return or offer to return life insurance premiums to effectuate a rescission, even where the rescission is for alleged fraud." (Paper 23, at 8). Furthermore, Defendant notes that "both the insurance policy issued to the Trust and Maryland's insurance laws provide that the Policy is uncontestable after two years." (Paper 23, at 13). The Policy was issued on March 9, 2007

according to Defendant, and so the contestability period ended on March 9, 2009. (*Id*.). Therefore, Defendant maintains, any leave to replead this cause of action would be futile because the premiums needed to be tendered before the end of the contestability period. Finally, Defendant argues that Plaintiff is not entitled to keep the premiums as an offset. (*Id*. at 11).

In response to Defendant's argument, Plaintiff maintains that the court, when sitting in equity, may allow Plaintiff to retain an amount of the premium as an offset to its expenses and costs incurred in relation to the Policy. (Paper 39, at 5). Plaintiff also contends that its cause of action is for a declaratory judgment, not a rescission, and that there is a clear distinction between the two actions. (*Id*.).

Defendant's claim that the complaint must be dismissed because Plaintiff failed to return the premium within the two year contestability period is without merit. Plaintiff has not brought a claim for rescission, but for a declaratory judgment. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Fourth Circuit has held:

> it is elementary that a federal court may
> properly exercise jurisdiction in a
> declaratory judgment proceeding when three
> essentials are met: (1) the complaint
> alleges an actual controversy between the
> parties of sufficient immediacy and reality
> to warrant issuance of a declaratory
> judgment; (2) the court possesses an
> independent basis for the jurisdiction over
> the parties (*e.g.*, federal question or
> diversity jurisdiction); and (3) the court
> does not abuse its discretion in its
> exercise of jurisdiction.

*Volvo Equip. N. Am. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592
(4th Cir. 2004)(citing 28 U.S.C. § 2201; *Cont'l Cas. Co. v.
Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994)).   In this case, all
three of these requirements are met, and Defendant does not
argue otherwise.   Plaintiff's claim for a declaratory judgment
is adequately pleaded and will not be dismissed.

In moving to dismiss Count II, Defendant argues that a sale
of the Policy of the kind alleged by Plaintiff is lawful and
therefore Plaintiff fails to state a claim upon which relief can
be granted.   Defendant cites *Fitzgerald v. Rawlings*, 114 Md. 470
(1911), arguing that the Court of Appeals of Maryland refused to
hold "that a life insurance policy was void *ab initio* for lack
of an insurable interest, when the insured purchased the policy
pursuant to an agreement made prior to the date of the policy,
to transfer it to a creditor."   (Paper 23, at 24).

Plaintiff asserts that Defendant's arguments are
disingenuous and that Maryland courts have not yet addressed the

standard to be applied in determining whether a policy transaction is a STOLI-transaction lacking an insurable interest. (Paper 39, at 9). Plaintiff explains the three different standards that have been adopted by courts around the country, and maintains that under any of these standards the Policy lacks an insurable interest. Plaintiff also cites a recent case decided by the Fourth Circuit, *First Penn-Pac. Life Ins. Co. v. Evans*, 2009 WL 497394 (4th Cir. 2009)(unpublished decision), which adopts the "third-party participation" standard. This standard requires a plaintiff to show that some third party "participated" in a scheme with the insured to procure a policy for the purpose of selling the policy or beneficial interest in the policy after policy issuance. (*Id*. at 9). In *First Penn-Pac. Life Ins. Co. v. Evans*, the Fourth Circuit said that, under Arizona law, "an 'insurable interest' in the context of a life insurance policy is an interest in having the insured life persist, as opposed to an interest only in the loss of that life." 2009 WL 497394 at *2 (referencing *Grigsby v. Russell*, 222 U.S. 149, 155 (1911)). In that case, an insured applied for multiple insurance policies, and then offered them for sale, falsely holding out that he was suffering from a terminal illness. *Id*. at 2-3. After First Penn-Pacific attempted to rescind the policy and was rejected by the insured, it filed suit. The Fourth Circuit upheld a grant of summary

judgment for the insured, holding that there was no "evidence that anyone other than Moore [the insured] was a participant in the scheme at the time Moore obtained the First Penn policy." *Id*. at *3. The Fourth Circuit added that there was no third party participant in the "procurement of Moore's policy and therefore no one was 'wagering' on Moore's life in violation of public policy." *Id*. In this case, Plaintiff alleges facts that are clearly distinguishable and may fit the third party participation standard: it alleges that there was third party participation in the procurement of the policy and that people besides Rosenblatt were involved in a scheme to obtain the policy. Though Defendant may ultimately prevail on the substance, Plaintiff has met its burden for surviving a motion to dismiss.

The Maryland case cited by Defendant as defining insurable interest is inapposite at this stage of the proceedings. In that case, the insurance company did not claim that no policy existed and the parties admitted that the fund was legal and valid. *Fitzgerald,* 114 Md. at 474-476. The issue before the court concerned the assignability of life insurance contracts and whether that particular policy was made as part of a wager, which the court found that it was not. *Id*.

At this stage, it would be premature to dismiss the claim. Plaintiff has adequately pleaded a cause of action that no

17

insurable interest existed because the insured was participating in a scheme with a third party to purchase the Policy.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be denied, and Plaintiff's motion for leave to file an amended complaint will be granted.   A separate Order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
